IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JADE TIFFANY BUSONE,

                                                                                     OPINION AND ORDER

              Plaintiff,

                                                                                       12-cv-671-bbc

    v.

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,
MICHELLE HAMILTON, MARY HOPKINS-BEST
and KATHLEEN DEERY,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        In 2010, plaintiff Jade Tiffany Busone was admitted into a graduation program for vocational rehabilitation at the University of Wisconsin-Stout.  A year later, plaintiff was dismissed after university officials concluded that plaintiff's cerebral palsy prevented her from communicating effectively.  In response, plaintiff filed this lawsuit in which she asserts claims under the Americans with Disabilities Act, the Rehabilitation Act and 42 U.S.C. § 1983.

        Defendants have filed a motion for summary judgment, dkt. #56, in which they argue that all of plaintiff's claims are barred by the doctrine of judicial estoppel because of a state court lawsuit for negligence that plaintiff won against the hospital where she was born. Alternatively, defendants seek dismissal of plaintiff's claims for violations of her right to due process (both substantive and procedural) and equal protection of the laws, as well as any

1

claim that plaintiff may seek damages under § 1983 for violations of the ADA and the Rehabilitation Act. Although defendants do not raise arguments about the merits of plaintiff's claims under the ADA and the Rehabilitation Act, they argue that plaintiff's remedy under those statutes should be limited to injunctive relief.

I am granting defendants' motion in part, denying it in part and staying it in part. First, I decline to apply the doctrine of judicial estoppel because defendants have not shown that plaintiff's claims in this case are clearly inconsistent with her claims in the state court case. Second, I am granting as unopposed defendants' motion as it relates to plaintiff's claims brought under § 1983, with the exception of her procedural due process claim. With respect to that claim, I am staying a decision to allow plaintiff to respond to defendants' argument that the student handbook did not give her a property interest in her continued education. Finally, I am denying as premature and undeveloped defendants' arguments about damages.

OPINION

A. Judicial Estoppel

The doctrine of judicial estoppel is easily summarized: "a party who prevails on one ground in a prior proceeding cannot turn around and deny that ground in a subsequent one." Butler v. Village of Round Lake Police Dept., 585 F.3d 1020, 1022-23 (7th Cir. 2009). See also Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) ("The doctrine of judicial estoppel prevents a party from prevailing on an argument in an earlier matter and then relying on a

contradictory argument to prevail in a subsequent matter."); Walton v. Bayer Corp., 643 F.3d 994, 1002-03 (7th Cir. 2011) ("A litigant is not permitted to advance a ground in one lawsuit, prevail on that ground, and in a later lawsuit against the same party seek a judgment based on a repudiation of its earlier position."). The purposes of the doctrine are clear as well: to prevent fraud and protect the integrity of the judicial process. Grochocinski v. Mayer Brown Rowe & Maw, LLP, 719 F.3d 785, 794-95 (7th Cir. 2013).

What is less clear is the scope of the doctrine because the Supreme Court has declined to set forth a test for it. New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (doctrine is "not reducible to any general formulation of principle"). See also Walton, 643 F.3d at 1002. ("For reasons we don't understand, the cases are coy about defining the doctrine."). Instead, the Court has identified "several factors [that] typically inform the decision whether to apply the doctrine in a particular case": (1) whether the party's position is "clearly inconsistent" with its earlier position; (2) whether the party prevailed on its position in the earlier case; and (3) whether the party will "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 750-51. However, "additional considerations may inform the doctrine's application in specific factual contexts," id., and the decision whether to estop a party is ultimately left to the court's discretion. Id. at 750. The parties focus on the first factor, so I will do the same.

Defendants argue that plaintiff should be judicially estopped from asserting all of her claims in this case because they are inconsistent with positions she took in a lawsuit in New York state court in which she sued the hospital where she was born for negligence. In

3

particular, defendants say that all of plaintiffs' claims in this case "are predicated on her argument that, with reasonable accommodation she is sufficiently able to pursue a specialized Masters' in Vocational Rehabilitation from UW-Stout" and that this argument is inconsistent with a lawsuit in which plaintiff won damages against a hospital for causing her disability. Dkt. #67 at 29.

Defendants' argument seems to have two parts. First, defendants point to various pieces of testimony and argument from plaintiff, her expert witnesses and her lawyer in which defendants say that plaintiff took the position at trial that she was unable to work. Second, defendants point to the verdict itself, in which the jury awarded plaintiff $2,000,000 in future lost earnings, as being inconsistent with plaintiff's claims in this case. Defendants cite several cases in which courts have applied the doctrine of judicial estoppel in the context of an ADA claim. Butler v. Village of Round Lake Police Dept., 585 F.3d 1020, 1023 (7th Cir. 2009); Opsteen v. Keller Structures, Inc., 408 F.3d 390, 391 (7th Cir. 2005); Cook v. Union Pacific Rail Co., 4:07CV3241, 2008 WL 4540164 (D. Neb. Oct. 7, 2008).

Although there may be some tension between plaintiff's claims in the two cases, I am not persuaded that there is a clear inconsistency between the claims or that dismissing plaintiff's claims is necessary to prevent fraud. To begin with, the legal theories in the two cases are different. The question in plaintiff's state court case was whether the hospital's negligence had *injured* plaintiff; she did not have to prove a particular degree of disability in order to prevail on her claim.

4

It is true that the jury in the state court case awarded plaintiff lost future earnings, but that award is not dispositive. The question in this case is not whether plaintiff's disability prevents her from obtaining a job, but whether it prevents her from completing a masters program. Defendants do not argue that plaintiff testified in the state court that she was unable to pursue an education or that the jury awarded her damages for that inability. In fact, plaintiff testified during the state court trial that she had received a bachelor's degree in therapeutic recreation. Dkt. #82-2. This difference between plaintiff's two lawsuits is what distinguishes the cases defendants cite, each of which involved a representation by the plaintiff in a previous case that he was unable to work and an allegation in the current case that he was able to perform the essential functions of a particular job. Butler, 585 F.3d at 1023 (judicial estoppel applied when plaintiff failed to explain inconsistency between claim for disability benefits and ADA claim); Opsteen, 408 F.3d at 391 (same); Cook, 2008 WL 4540164 (judicial estoppel applied when plaintiff alleged in previous case that he was unable to perform same job that was subject of ADA claim).

In their reply brief, defendants argue for the first time that a finding that plaintiff is unable to work is a finding that she cannot complete the masters program because "a student must show an ability to work in order to successfully pursue a MS VR degree." Dfts.' Br., dkt. #94, at 3. However, the proposed findings of fact defendants cite for this proposition do not support it. The closest they come is to say that students must complete a 150-hour practicum and a 300-hour internship, Dfts.' PFOF ¶¶ 65 and 68, dkt. #66, but that is not the same thing as sustaining long-term employment.

5

Even if I were to assume that successful completion of the masters program requires an ability to work, that finding would not be "clearly inconsistent" with the state court lawsuit, for two reasons. First, defendants are simply wrong that the jury in the state court case awarded the amount of lost earnings that plaintiff's expert had calculated in the event the jury determined that plaintiff would be unable to work during her lifetime. Although the jury awarded a substantial amount of money for lost earnings ($2 million), this was less than the lifetime amount calculated by the expert ($2.4 million), compare dkt. #65-1 at 8 with dkt. #65-6 at 19-21, which means that the jury may have found that plaintiff could work at a diminished capacity. Second, the jury was not asked to determine plaintiff's ability to work with a reasonable accommodation. Rather, they were asked to determine the likelihood that plaintiff would be hired, which requires consideration not just of plaintiff's abilities, but also of a potential employer's willingness to provide accommodations.

The testimony cited by defendants from the state court case does not show a clear inconsistency either. With respect to plaintiff's testimony, defendants cite a written statement in which plaintiff discussed her frustration over her speech limitations. E.g., dkt. #65-8 ("The challenges and disturbances I have faced and continue to face will never end[.] I am in this damaged body for the rest of my life."). However, defendants do not dispute plaintiff's allegation that the statement was not offered into evidence in the state court trial. Dfts.' Rep. to Plt.'s Resp. to Dfts.' PFOF ¶ 37, dkt. #95. In any event, plaintiff says nothing in her statement about an ability to work or go to school. Defendants also cite testimony in which plaintiff admitted that her speech was "impaired," Dfts.' PFOF ¶ 31, but that

6

statement adds nothing because plaintiff is not claiming in this case that her speech is perfect. In fact, her ADA claim *requires* her to show that she has an "impairment that substantially limits" her ability to speak, 42 U.S.C. § 12102(1)(A), so that testimony is consistent with her claim in this case. Further, defendants acknowledge that plaintiff testified at the state court trial that she hoped to work some day, Dfts.' PFOF ¶ 30, so she did not represent herself as unable to work.

Defendants cite testimony from one of plaintiff's medical experts at the trial in which she answered "yes" to the question, "Is [plaintiff] what we would call totally disabled?" Dkt. #65-3 at 15. However, defendants cite no followup testimony in which the expert explained what the lawyer or the expert meant by the term "totally disabled" and they do not point to any statements by the expert that he believed plaintiff was unable to work or go to school, so the conclusory statement is not helpful. Defendants also cite testimony from plaintiff's damages expert. Although he provided a figure that represented plaintiff's potential lost earnings over her lifetime, he offered no opinion about plaintiff's ability to work or obtain an education, and he would not have been qualified to offer such an opinion.

Next, defendants cite a snippet from the closing argument of plaintiff's lawyer: "Is she going to get a job? Would you hire her? Would you? Have the defense ask him that question." Dkt. #65 at 95. Even if I assume that a series of questions in a closing argument could provide grounds for a judicial estoppel defense, the questions do not help defendants. Although the lawyer may have been implying that an employer would be unlikely to hire plaintiff, he did not make any representations about plaintiff's ability to work or pursue an

7

education.

Finally, defendants cite a press release from *after* the jury verdict, but I agree with plaintiff that a press release cannot serve as the basis for a judicial estoppel defense for the obvious reason that it was not presented at the trial and could not have influenced the jury verdict. In sum, I conclude that defendants have failed to show that any of plaintiff's claims in this case are barred by judicial estoppel.

### B. Due Process

Plaintiff says that defendants denied her her right to due process when they terminated her from the graduate program. A threshold question for this claim is whether plaintiff was deprived of her property within the meaning of the due process clause, or, in the parlance used in the case law, whether plaintiff had a "property interest" in continuing her education the university. A graduate student does not acquire a property interest simply by enrolling at the school. Williams v. Wendler, 530 F.3d 584 (7th Cir. 2008). Rather, she must point to "a legally protected entitlement," such as "an agreement between [the plaintiff] and the school that [s]he would be dismissed only for good cause." Charleston v. Board of Trustees of University of Illinois at Chicago, 741 F.3d 769, 772-73 (7th Cir. 2013).

In this case, plaintiff relies entirely on one sentence from the student handbook as creating a legal entitlement to continued education: "The Vocational Rehabilitation Program reserves the right to suspend or terminate a student's enrollment in the program at any time for academic, performance and/or behavior related reasons as determined by the faculty in

the program." Dkt. #57-1. In the employment context, the court of appeals has stated that a handbook can create a property interest, e.g., Border v. City of Crystal Lake, 75 F.3d 270, 273 (7th Cir. 1996), and I see no reason why the rule would be different in the education context. Ross v. Creighton University, 957 F.2d 410, 416 (7th Cir.1992) ("[C]atalogues, bulletins, circulars, and regulations of the institution made available to the matriculant may become a part of the contract.").

One question raised by the handbook is whether language that the university has "the right" to dismiss a student "for academic, performance and/or behavior related reasons" may be construed as a promise to plaintiff that it will *not* dismiss her except for one of those reasons. However, defendants do not raise that issue, so I will not consider it. Instead, defendants argue that the handbook cannot create a property interest because it contains a disclaimer at the beginning: "[T]he statements set forth in this Handbook are for information purposes only and should not be construed as the basis of a contract between the student and the institution." Dkt. #57-1 at 2.

In the employment context, both the Court of Appeals for the Seventh Circuit and the Wisconsin Court of Appeals have held that disclaimers similar to the one in defendants' handbook defeat any argument of a property interest or contractual right. Garcia v. Kankakee County Housing Authority, 279 F.3d 532, 535-36 (7th Cir. 2002) (handbook did not create property interest when it included the following language: "The following policies and procedures state current policy and are not themselves to be considered or interpreted as terms of an implied or express contract. The Authority reserves the right to amend,

9

modify and/or revoke any of its policies, practices, procedures and standards summarized in this handbook."); Helland v. Kurtis A. Froedtert Memorial Lutheran Hospital, 229 Wis. 2d 751, 760, 601 N.W.2d 318, 323 (Ct. App. 1999) (handbook not contract when it included the following language: "This Handbook is not intended to create, nor does it create, contract rights.").

In light of this authority, it seems unlikely that the student handbook in this case could be construed as creating a property interest. However, I cannot yet grant summary judgment to defendants on this claim because defendants did not discuss the handbook in their opening brief. It was not until their reply brief that they pointed out the disclaimer, so plaintiff has not had an opportunity to respond to this argument. Accordingly, I will direct plaintiff to show cause why her due process claim should not be dismissed in light of the disclaimer in the handbook. In addition, I will a reserve a ruling on defendants' other arguments about plaintiff's due process claim, including that she received all the process she was due, that defendants are entitled to qualified immunity on the due process claim and that dismissal of the due process claim requires dismissal of the individual defendants.

### C. Remedies under the ADA and the Rehabilitation Act

Defendants argue that the only relief that plaintiff can obtain on her ADA claim is injunctive relief and attorney fees. They argue that damages are barred for several reasons: (1) punitive damages are not available under the Rehabilitation Act or the ADA; (2) compensatory damages are not available because plaintiff cannot prove that defendants

engaged in intentional discrimination; (3) lost wages are barred by the doctrine of judicial estoppel; (4) plaintiff failed to mitigate her economic damages; and (5) any lost wages are speculative.

Plaintiff does not deny that the ADA and the Rehabilitation Act do not authorize an award of punitive damages and she does not deny that she needs to prove intentional discrimination to recover compensatory damages, so I need not consider those issues. However, I conclude that it is premature to determine whether plaintiff can prove intentional discrimination, particularly in light of defendants' failure to develop their argument on this issue and their concession that genuine issues of material fact exist on the question whether defendants violated the ADA and the Rehabilitation Act. Once all the evidence is in at trial, defendants may reassert their argument that plaintiff has not met the standard for obtaining compensatory damages.

With respect to damages for lost wages, defendants reassert their argument under the doctrine of judicial estoppel, stating that plaintiff "has already been compensated for a lifetime of lost earnings." Dfts.' Br., dkt. #67, at 58. However, I concluded above that defendants have failed to show that plaintiff's position in this case is clearly inconsistent with any positions that she took in the state court case, so judicial estoppel does not apply. The real problem presented by the jury verdict in the state court case is the potential for double recovery, but defendants have not raised a defense of unjust enrichment, setoff or a similar doctrine, so I cannot resolve that issue now. However, both sides should consider resolutions for that problem and raise them in motions in limine, if necessary.

Finally, defendants say that plaintiff failed to mitigate her damages and that her calculation of lost wages is speculative. However, both of these arguments are conclusory and undeveloped in defendants' opening brief, so defendants have forfeited them for the purpose of summary judgment.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Board of Regents of the University of Wisconsin System, Michelle Hamilton, Mary Hopkins-Best and Kathleen Deery, dkt. #56, is DENIED with the respect to the issue whether plaintiff Jade Tiffany Busone's claims are barred under the doctrine of judicial estoppel. The motion is GRANTED with respect to plaintiff's claims brought under 42 U.S.C. § 1983, with the exception of her due process claim. Plaintiff may have until May 28, 2014, to show cause why her due process claim should not be dismissed for the reasons discussed in this order.

Entered this 16th day of May, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge